| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| CHEVRON NIGERIA LIMITED, | § |
| | § |
| Plaintiff, | § |
| | § |
| *versus* | § CIVIL ACTION NO. 1:09-CV-821 |
| | § |
| CONTRACT OPERATORS, INC., LYNDA SAWYER, and TOM SAWYER, | § § |
| | § |
| Defendants. | § |

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiff Chevron Nigeria Limited's ("Chevron Nigeria") Motion to Compel Arbitration and Motion to Stay Pending Arbitration (#19). Chevron Nigeria moves the court to compel arbitration of the contract disputes involving Defendants Contract Operators, Inc., Lynda Sawyer, and Tom Sawyer (collectively, "Defendants") pursuant to 9 U.S.C. § 4. Having reviewed the pending motion, the pleadings, the submissions of the parties, and the applicable law, the court finds that Chevron Nigeria's motion should be granted.

I.  Background

Chevron Nigeria alleges that on or about August 8, 2008, it entered into a contract with Defendant Contract Operators, Inc. ("COI") and its purportedly wholly-owned and controlled company, Contract Operators Nigeria Limited ("CONL"). Chevron Nigeria contends that, since that time, CONL has provided contract personnel services for specific tasks related to Nigeria's oil and gas industry and has been paid for the services rendered. Specifically, as indicated by Defendants' Original Counterclaim, Defendants' business consists of "providing services to third parties, including foreign companies, which services included head hunter services related to the

identification, solicitation and location of various professional level employees and additionally providing labor services, from said professional employees, on a contract basis."

Chevron Nigeria maintains that, on February 2, 2009, it mistakenly deposited a payment of $770,317.00 into COI's United States bank account at Wachovia Bank in Silsbee, Texas. Chevron Nigeria asserts that this payment was unrelated to any invoice, amounts owed, or services rendered by CONL; rather, it intended to make this payment to an unrelated party. Despite initial efforts to contact Lynda Sawyer and Tom Sawyer (collectively, "the Sawyers"), the officers of COI, the Sawyers did not respond to requests and demands that the money be returned.

On September 3, 2009, Chevron Nigeria filed its Original Complaint, requesting preliminary injunctive relief and reimbursement for money wrongfully had and received. Chevron Nigeria effected service of process on September 16, 2009; however, Defendants failed to appear in a timely manner. On October 21, 2009, the clerk of court filed an entry of default for COI, Lynda Sawyer, and Tom Sawyer. Subsequently, on October 26, 2009, Defendants filed an answer, denying the allegations in Chevron Nigeria's complaint and asserting a number of affirmative defenses, including offset, waiver, and estoppel. Defendants specifically deny that the payment was a mistake or that COI or CONL has been paid for services provided to Chevron Nigeria. Rather, Defendants maintain that at the time the money was deposited into their account, Chevron Nigeria owed Defendants an amount "substantially in excess of $1,000,000.00 US" for the services rendered. On November 16, 2009, Defendants filed a counterclaim for breach of contract, tortious interference, and fraud.

Chevron Nigeria filed the instant motion to compel arbitration and stay the proceedings pending arbitration on October 29, 2009. Chevron Nigeria points out that Defendants allege that

the mistaken payment amounts to an offset because Chevron Nigeria owed them in excess of $1,000,000.00 pursuant to the contracts between the parties. Chevron Nigeria contends that because the parties' contract contains an arbitration clause, any dispute related to the contract must be resolved through an arbitration proceeding held in Nigeria.

Defendants acknowledge the inclusion of the arbitration clause in the contract. Defendants contend, however, that they did not object to the arbitration clause because they believed it would be highly unlikely that any dispute would be arbitrated in Nigeria due to the inherent dangers associated with traveling to that country. Although Defendants apparently had no qualms about recruiting and sending workers to Nigeria while receiving payment for such services, they now claim that they should not be required to arbitrate the instant dispute there. They point out that the United States State Department has maintained a negative travel advisory as to Nigeria for many years and foreign oil companies have implemented "essential travel only" policies for their personnel due to the safety and security risks. Defendants contend that they are concerned about traveling to Nigeria to arbitrate a dispute involving a Chevron entity with a close relationship to the Nigerian government. Furthermore, Defendants argue that their counterclaims should not be referred to arbitration because the claims fall outside of the arbitration provisions of the contract.

II.   Analysis

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. "Whether a contract requires arbitration of a given dispute is a matter of contract interpretation and a question of law for the court." *Smith v. Transport Workers Union of Am.*, 374 F.3d 372,

374 (5th Cir. 2004); *accord Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003), *cert. denied sub nom. State Concern Turkmenneft v. Bridas S.A.P.I.C.*, 541 U.S. 937 (2004).

Section 4 of the FAA sets forth the rules governing the district court's role in the arbitration process. It provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Once a party petitions the district court to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see Jureczki v. Banc One Texas, N.A.*, 252 F. Supp. 2d 368, 370 (S.D. Tex. 2003). In essence, "[c]ourts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement." *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085-86 (8th Cir. 2001)).

Courts employ a two-step analysis to determine whether a party can be compelled to arbitrate. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009); *Jureczki*, 252 F. Supp. 2d at 370 (citing *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)). First, the court must determine whether the parties agreed to arbitrate the dispute in question. *Jones*, 583 F.3d at 233-34; *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th

4

Cir. 2008); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 293 (5th Cir. 2005); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *see Cargill Inc. v. Philen Farm P'ship*, No. 08-458, 2009 WL 54318, at *2 (M.D. La. Jan. 8, 2009). If this question is answered in the affirmative, the court then determines whether any federal statute or policy renders the parties' claim non-arbitrable. *Jones*, 583 F.3d at 234; *Sherer*, 548 F.3d at 381; *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007); *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *Jureczki*, 252 F. Supp. 2d at 370 (citing *OPE Int'l LP*, 258 F.3d at 445); *Cargill Inc.*, 2009 WL 54318, at *2.

When determining whether the parties agreed to arbitrate the dispute in question, the court must decide: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Jones*, 583 F.3d at 234; *Sherer*, 548 F.3d at 381; *Safer*, 422 F.3d at 293; *Jureczki*, 252 F. Supp. 2d at 371 (quoting *OPE Int'l LP*, 258 F.3d at 445); *accord Cargill Inc.*, 2009 WL 54318, at *2 (citing *Webb*, 89 F.3d at 258 (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994))). Here, neither party disputes that there is a valid agreement to arbitrate. Specifically, in their Response to Plaintiff's Motion to Compel Arbitration, Defendants "acknowledge that one or more of the contracts executed between COI and the Plaintiff, Chevron Nigeria Limited, included provisions requiring that any dispute related to the duties and obligations of the parties as detailed within the various contracts would be resolved through Arbitration proceedings to be held in Nigeria."

As to whether the dispute in question falls within the scope of that arbitration agreement, Chevron Nigeria argues that Defendants' claim that they are entitled to an offset of $1 million for

the work they have performed relates to the contract between the two parties. Conversely, Defendants argue that their claims for contractual breach, tortious interference with contractual relationships, and fraud fall outside the parameters of the various contracts executed by and between the parties. The contract in question, the Contractor Services Contract No. EGP 2008-CW611689, provides:

> **17.2 Resolution of Disputes.** The Parties shall exclusively and finally resolve any Dispute between them using direct negotiations, mediation, and arbitration as set out in Section 17, except as permitted in Section 13.6.
> ***
> **17.5 Arbitration.** If the Dispute is not resolved by mediation within thirty days from the date of the notice requiring mediation, or if the Dispute is unresolved within sixty days from the date of the notice requiring direct negotiations, then the Dispute shall be finally settled by binding arbitration and either Party may initiate such arbitration by giving notice to the other Party. The arbitration shall be conducted in accordance with the United Nations Commission on International Trade Law Arbitration ("UNCITRAL") Rules, except to the extent of conflicts between the UNCITRAL Rules at present in force and the provisions of this Contract, in which event the provisions of this Contract prevail. The International Centre for Dispute Resolution (in the case of Disputes involving one or more non-U.S. parties) or the American Arbitration Association (in the case of Disputes involving all U.S. parties) is the appointing authority. The place of arbitration is Lagos, Nigeria.

The unambiguous language of the agreement provides for binding arbitration of "the dispute," which includes "any controversy arising out of this Contract or the performance of the Services."[1] Accordingly, the court finds that there is a valid agreement to arbitrate between the parties and that Defendants' claims for breach of contractual obligations, tortious interference with existing relationships, and fraud fall within the scope of the agreement. *See Ascension Orthopedics, Inc. Curasan AG*, No. A-06-CA-424-LY, 2006 WL 2709058, at *3 (W.D. Tex. Sept. 20, 2006) (quoting *In re Bruce Terminex Co.*, 988 S.W.2d 702, 703 (Tex. 1998)) ("[T]he

---

[1] "Dispute" is defined in Section 1.1 of the Contractor Services Contract No. EGP 2008.

6

mere pleading of tort claims does not preclude the application of the arbitration clause so long as the claims 'touch upon' matters covered by the written contract containing the arbitration clause."). Moreover, the court finds the arbitration location of Lagos, Nigeria, appropriate despite Defendants' objection. Although the United States State Department warns United States citizens of the risks of traveling to Nigeria, these warnings, as noted above, did not stop Defendants from routinely recruiting and sending workers to Nigeria in exchange for payment; in fact, the primary purpose of CONL is to provide such services in Nigeria. Furthermore, other cases have been arbitrated in Lagos, Nigeria, pursuant to arbitration clauses similar to the one agreed to by Defendants, without apparent adverse consequences stemming from such choice of venue. *See Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 99 (D.D.C. 2006) (citing *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 195 (2d Cir. 1999)).

As to whether there are legal constraints external to the parties' agreement that foreclose arbitration, Defendants argue that Chevron Nigeria should be estopped from asserting the arbitration provision as a result of its "voluntary institution of litigation." The court disagrees. Chevron Nigeria initiated the instant lawsuit to seek injunctive relief and reimbursement for money wrongfully had and received by Defendants. In its original complaint, Chevron Nigeria alleges that it mistakenly deposited $770,317.00 into Defendants' bank account. This claim falls outside the scope of the parties' contractual relationship, as Chevron Nigeria intended to make the payment to an unrelated party, completely independent of the contract with Defendants. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (noting that courts apply a presumption against the waiver of the right to arbitration).

Moreover, the court notes that its role is limited with regard to issues of arbitrability. *See Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987). "The court's function is to decide whether the claim asserted is the type of claim which the parties have agreed to arbitrate." *Id*. (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)). Furthermore, once a court determines that a valid agreement exists, the court must resolve any doubts concerning the scope of an arbitration agreement in favor of arbitration. *Safer*, 422 F.3d at 294; *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004); *see Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 283 (5th Cir. 2007) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625)). Accordingly, a valid arbitration clause should be enforced "'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Jones*, 583 F.3d at 235 (quoting *Personal Sec. & Safety Sys. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)); *Safer*, 422 F.3d at 429. Thus, resolving any doubt about the scope of the arbitration clause in favor of arbitration, the court finds that arbitration is the proper forum for the resolution of Defendants' claims against Chevron Nigeria.

III. Conclusion

Based on the foregoing analysis, Chevron Nigeria's motion to compel arbitration and motion to stay is GRANTED. The parties are ordered to arbitrate the Defendants' claims against Chevron Nigeria in Lagos, Nigeria, in accordance with the terms of the parties' Contractor Services Contract No. EGP 2008-CW611689. Accordingly, the case is administratively closed pending arbitration, and any pending motions are denied as moot.

SIGNED at Beaumont, Texas, this 26th day of April, 2010.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE